UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY BLANCHARD, d/b/a/ LARRY'S
AMOCO/BP AND WRECKER SERVICE,

     Plaintiff,

v.                          Case No.: 8:09-cv-2049-T-33AEP

CITY OF WINTER HAVEN, a Municipal
Corporation; CITY OF WINTER HAVEN
POLICE CHIEF MARK LEVINE, Individually
and as Agent of CITY OF WINTER HAVEN;
POLK COUNTY, a Political Subdivision of the
State of Florida; and POLK COUNTY
SHERIFF GRADY JUDD, Individually, and as
Agent of POLK COUNTY,

     Defendants.

_____/

**<u>ORDER</u>**

This cause comes before the Court pursuant to Defendants
City of Winter Haven and Police Chief Mark Levine's motion to
dismiss Plaintiff's amended complaint (Doc. # 20), filed on
July 2, 2010, and Defendants Polk County and Polk County
Sheriff Grady Judd's motion to dismiss Plaintiff's amended
complaint (Doc. # 21), filed on July 6, 2010.  Plaintiff Larry
Blanchard, doing business as Larry's Amoco/BP and Wrecker's
Service, filed a response to each motion on July 17, 2010, and
July 21, 2010, respectively.  (Docs. # 23 and 24,
respectively).  On August 3, 2010, the City of Winter Haven
filed a reply to Blanchard's response.  (Doc. # 29).  For the

reasons set forth below, the City of Winter Haven and Police Chief Levine's motion to dismiss is granted, and Polk County and Sheriff Judd's motion to dismiss is granted.

I.   **Background**

This is a 42 U.S.C. § 1983 civil rights action. (Doc. # 19 at 1).  In Counts I-VI, Blanchard asserts claims against the City of Winter Haven and Police Chief Levine based upon alleged violations of Blanchard's constitutional rights under the First and Fourteenth Amendments.  See id.  In Counts VII-IX, Blanchard alleges similar claims against Polk County and Sheriff Judd.  See id.  Blanchard's claims are discussed in greater detail below.

Blanchard is a sole proprietor doing business as Larry's Amoco/BP and Wrecker Service ("Larry's Wrecker Service") in Winter Haven, Polk County, Florida.  Id. at 4.  Larry's Wrecker Service operates for the purpose of consensual and non-consensual towing of motor vehicles.  Id.

Blanchard has been in the towing business since before 1990.  Id.  Blanchard asserts that up until September 2006, he was on the rotational list for the City of Winter Haven Police Department as a licensed wrecker for the towing of vehicles damaged in accidents to which the City of Winter Haven Police Department responded.  Id.

2

Blanchard alleges that at some point in 2002, he noticed a substantial decrease in calls pursuant to his inclusion on the rotational list.  Id.  Blanchard initially assumed the drop to be due to fewer accidents.  Id.  Blanchard subsequently conducted an "informal investigation," during which he claims he discovered that a specific officer within the City of Winter Haven Police Department, Bobby Schumate, was favoring a competing wrecker company, Bolton's Towing, by placing a disproportionate amount of requests to Bolton's Towing over other, equally qualified wrecker companies.  Id. at 4-5.

Blanchard subsequently filed a complaint with the City of Winter Haven Police Department against Officer Schumate, alleging discrimination in his preferential selection of Bolton's Towing over the proper rotational candidate under the rotational system.  Id. at 5.  Blanchard alleges that the Internal Affairs Department of the City of Winter Haven Police Department "discovered or admitted that Officer Schumate had requested Bolton's Towing over the proper rotational candidate at least FORTY-THREE (43) times."  Id. (emphasis in original). Blanchard asserts that Officer Schumate, after being disciplined for his conduct, continued his preferential treatment for Bolton's Towing, which ultimately led to his

3

discharge from the City of Winter Haven Police Department. Id.

Blanchard alleges that after Officer Schumate's termination, Sergeant Kevin Dibbern, and other members of the City of Winter Haven Police Department, "blaming [Blanchard] for the termination of their friend and fellow employee, began a campaign of disparagement and discrimination" against Blanchard, which he claims "ultimately resulted in [Blanchard's] removal from the City of Winter Haven Police Department rotational list." Id. Blanchard claims that "Sergeant Dibbern and others commenced to tell members of the public . . . that [Blanchard] had been accused of illegally towing vehicles, of improper conduct and of [Blanchard's] regular use of racial epithets and slurs, all of which representations were false and slanderous and which were known to be false at the time they were made." Id. at 6.

Blanchard alleges that "[a]t some point in May of 2006, [he] responded to an emergency phone call from an existing customer, regarding an accident that had just occurred up the street from [his] place of business, because the customer thought the vehicle was on fire, and that the occupants would need emergency service that [he] could provide." Id. When Blanchard arrived at the accident scene, "he observed that it

4

was not such an emergency as had been described on the telephone." Id. Blanchard claims "[t]he driver of the vehicle, unaware of the rotational system, recognized [Blanchard], and requested his assistance." As a result of Blanchard responding to the customer's call, the City of Winter Haven filed a criminal complaint against him for being at the scene and soliciting business as an unauthorized wrecker operator, in violation of Florida Statute § 323.002.[1] Id. at 6-7.

Blanchard alleges that "[a]t some point in mid-September [of 2006], [he], without notice, was removed from the Rotation

---

[1] The statute provides that, in a county or municipality that operates such a wrecker operator system, it is a noncriminal violation punishable by fine "for an unauthorized wrecker operator or its employees or agents to monitor police radio for communications . . . in order to determine the location of a wrecked or disabled vehicle for the purpose of driving by the scene [to solicit business]." Fla. Stat. § 323.002(2)(a). It is a second degree misdemeanor for an unauthorized wrecker operator to do either of the following: (1) "before the arrival of an authorized wrecker operator, initiate contact with the owner or operator of such vehicle by soliciting or offering towing services, and tow such vehicle"; or (2) where the owner or operator initiates the contact, fail to "disclose to the owner or operator of the vehicle that he or she is not the authorized wrecker operator who has been designated as part of the wrecker operator system and [fail to] disclose, in writing, what charges for towing and storage will apply before the vehicle is connected to the towing apparatus." Fla. Stat. § 323.002(2)(b),(c). Finally, the statute makes it a first degree misdemeanor "for a wrecker operator to falsely identify himself or herself as being part of the wrecker operator system." Fla. Stat. § 323.002(2)(d).

List for the City of Winter Haven Police Department, allegedly as a result of the charges related to the May 2006 incident." Id. at 7.

Blanchard asserts that on November 27, 2006, "the charges against [him] were dismissed, because [he] had not violated any of the provisions of the said statute, but [he] was not reinstated to the Rotational list." Id.

Blanchard contends that "in the courthouse after the charges were dismissed, [he] spoke with Sergeant Dibbern . . . and Sergeant Dibbern advised [him] that [Sergeant Dibbern] thought [Blanchard] had gotten off on a technicality, but that he was still guilty in the officer's opinion, and that [Blanchard] would never be returned to the rotational list if he, the sergeant, had anything to say or do about it." Id.

Blanchard asserts that on or about January 5, 2007, he was advised by Police Chief Levine that he could submit a new application to be put on the rotational list. Thereafter, Blanchard submitted a new application showing that he met all the requirements to be placed on the rotational list. Id.

On or about March 2, 2007, Blanchard was "advised that he would not be returned to the rotational list, on the basis of complaints and staff input," which Blanchard claims "were unsubstantiated and never documented to [Blanchard], nor was

[he] allowed to rebut the same." Id. at 7-8.

On or about October 8, 2009, Blanchard filed the case at bar, seeking redress for violations of his constitutional rights by Sheriff Judd and Polk County. Doc. # 1; Doc. #19 at 23. At the time of the filing, Blanchard had been reinstated to the Polk County Sheriff's Department Rotational Allocation System, and he was on the rotational allocation system for other departments and divisions of Polk County. Doc. # 19 at 23. However, at some point in November, 2009, all departments and divisions of Polk County were instructed to cease using Blanchard's services, and Blanchard was removed from all rotational allocation systems used by the County. Id.

On June 22, 2010, Blanchard filed his Amended Complaint (Doc. # 19). The claims against the City of Winter Haven and Police Chief Levine are set forth in Counts I-VI. Count I seeks a writ of mandamus; Count II seeks declaratory relief; Count III seeks injunctive relief; Count IV is entitled "Damages"; Count V alleges a 42 U.S.C. § 1983 due process claim; and Count VI asserts a claim for violation of Blanchard's First Amendment right to free speech. See id. at 8-16.

The claims against Polk County and Sheriff Judd are set forth in Counts VII-IX. Count VII is titled "Damages"; Count

7

VIII alleges a 42 U.S.C. § 1983 due process claim; and Count IX asserts a claim for violation of Blanchard's First Amendment right to free speech. See id. at 18-22.

The City of Winter Haven and Police Chief Levine argue that Blanchard has failed to state a cause of action against the City of Winter Haven and Police Chief Levine in any count of the amended complaint. (Doc. # 20 at 2).

Similarly, Polk County and Sheriff Judd move to dismiss Counts VII-IX pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Doc. # 21 at 1).

**II.  Standard of Review**

On a motion to dismiss, the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

While a complaint attacked by a Rule 12(b)(6)

8

> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

citations omitted).  Further, courts are not "bound to accept

as true a legal conclusion couched as a factual allegation."

Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. **Analysis**[2]

Since Blanchard's § 1983 claims are the gravamen of the

amended complaint, upon which many of the other claims in the

instant action rely, the Court addresses Blanchard's § 1983

claims first.

---

[2] To the extent that Blanchard alleges claims against
Police Chief Mark Levine and Polk County Sheriff Grady Judd in
their individual capacities, the Court finds that they are
both entitled to qualified immunity.  The Court notes that
Blanchard does not address, and apparently concedes, this
argument as raised in the respective motions to dismiss.
Specifically, qualified immunity completely protects
government officials performing discretionary duties from suit
in their individual capacities unless their actions violate
clearly established statutory or constitutional rights of
which a reasonable person would have known.  Gonzalez v. Reno,
325 F.3d 1228, 1233 (11th Cir. 2003).  The individual
Defendants were acting within their discretionary authority
and, as discussed herein, no clearly established statutory or
constitutional right was violated.

**A.** **§ 1983 Due Process Claims: Counts V and VIII (as to the City of Winter Haven and Police Chief Mark Levine and Polk County Sheriff Grady Judd, respectively)**

**i.** **Legal Standard**

Title 42 U.S.C. § 1983 "imposes liability on any person who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and the laws.'" Biasella v. City of Naples, Fla., No. 2:04-CV-320-FTM-29-DNF, 2005 WL 1925705, at *2 (M.D. Fla. Aug. 11, 2005) (quoting 42 U.S.C. § 1983). The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).

"Property interests stem not from the Constitution, but

10

from such sources as statutes, regulations, ordinances, and contracts." <u>Arrington v. Helms</u>, 438 F.3d 1336, 1348 (11th Cir. 2006) (citing <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 576-77 (1972)).  "Whether these sources create a property interest must be decided by reference to state law." <u>Arrington</u>, 438 F.3d at 1348 (citing <u>Roth</u>, 408 U.S. at 577).

### ii.  **Analysis**

In Counts V and VIII, Blanchard asserts § 1983 claims based upon violations of his constitutional rights under the Fourteenth Amendment.  (Doc. # 19 at 13).  In Count V, Blanchard contends that Police Chief Mark Levine, acting under color of state law, deprived Blanchard of his right to due process by failing to provide administrative review for Blanchard's removal from the City of Winter Haven's rotational allocation system.  <u>Id.</u> at 13-14.  Similarly, in Count VIII, Blanchard contends that Sheriff Judd deprived Blanchard of his right to due process by failing to provide administrative review for Blanchard's removal from the Polk County rotational allocation system.  <u>Id.</u> at 20.  Blanchard asserts that in both instances he was not afforded an opportunity to challenge his removal from the rotation list, nor was he provided a reasonable opportunity for a hearing.  <u>Id.</u> at 14, 20.

To establish the requisite property interest, Blanchard

contends that Florida Statute § 323.002 "creates a property right to which [he] is entitled." (Doc. # 24 at 3).  Enacted in 1998, § 323.002 authorizes a county or municipal government to establish a "wrecker operator system" designed to prohibit what is commonly known as "wreck chasing."  Rebel Enters., Inc. v. Palm Beach Sheriff, 299 F.3d 1261, 1262 (11th Cir. 2002).  Where such a system is established, the statute prohibits certain conduct by any wrecker operator who has not been designated as an "authorized wrecker operator."  Id.; see Fla. Stat. § 323.002.  Anyone who violates the statute in specified ways is guilty of a misdemeanor.  Rebel, 299 F.3d at 1262; see Fla. Stat. § 323.002.  Florida Statute § 323.002, however, does not create a constitutionally protected property interest in remaining on the rotation list.

Blanchard argues, without citation to any legal authority, that since "no rule, regulation or ordinance is currently in force under charter of the City of Winter Haven as to the use or governance of a wrecker rotational system, the City of Winter Haven Police Department must, per force, default to the system defined in § 323.002, Florida Statutes."[3] (Doc. # 19 at 9 (emphasis in original)).  In his

---

[3]   Blanchard asserts that up until Florida Statute § 323.002 was enacted by the state legislature in 1998, Polk

12

response to the City of Winter Haven and Police Chief Levine's motion to dismiss, Blanchard cites to <u>Rebel</u>, the only reported Eleventh Circuit opinion addressing § 323.002, to support his argument that because the City of Winter Haven Police Department regularly relies on the provisions of § 323.002 as a basis for the removal of a tow truck operator from the rotational system, it cannot now claim that § 323.002 is inapplicable. (Doc. # 23 at 2-3).

Blanchard's analysis is plainly flawed. In <u>Rebel</u>, the Court determined that "although § 323.002(2) *permits* a county to 'operate[ ] a wrecker operator system,' the county must still act to adopt the system in the usual legislative manner, that is, by formal resolution or ordinance." <u>Rebel</u>, 299 F.3d at 1264. The <u>Rebel</u> Court held that absent such official action by a county or municipal entity to adopt a formal

---

County had an ordinance that controlled the wrecker rotational system, but that ordinance was repealed. (Doc. # 24 at 4; Doc. # 19 at 3). Blanchard asserts that "that property right then became protected by § 323.002, Florida Statutes, rather than the Polk County Ordinances." (Doc. # 24 at 4). In other words, Blanchard argues that the repealed County ordinance provided a property interest in being on the rotational list, and when the County ordinance was appealed, the property interest then became protected by § 323.002. Blanchard, however, provides no legal authority for the proposition that the County ordinance gave wrecker operators a protected property interest in being on the rotation list. Moreover, the Court finds, as discussed <u>infra</u>, that no property interest is created by § 323.002.

wrecker operator system, the sheriff does not have the authority to enforce the criminal penalties explicitly outlined in the statute.  See id.  Rebel only stands for the proposition that Blanchard could object to the Defendants' use of § 323.002 to impose penalties without a formal resolution or ordinance adopted by the County or municipality in the usual legislative manner.[4]  "Absent authorization by the *governing body* of the county, the sheriff does not have the authority to institute a system which carries with it the possibility of criminal penalties." Id.

Blanchard goes on to argue that "Section 15B-9.007, Florida Administrative Code and Chapters 321 and 323 of the Florida Statutes provide the procedures to be followed in order to deny inclusion, suspend, or remove a wrecker operator from a rotation allocation system or list." (Doc. # 19 at 9).

Again, Blanchard's logic is flawed.  While Rule 15B-9.007

---

[4] That, however, is not a claim in this action. Blanchard references another action in which he was charged and prosecuted criminally for violation of § 323.002(2)(b). "In that case, the Court refused to find the statute did not apply, but simply found that plaintiff had not violated the plain and simple meaning of the Statute." (Doc. # 23 at 3). The Court notes that Blanchard failed to attach any documents from this criminal case as an exhibit to his pleadings, but, regardless, that case is not relevant to determining whether § 323.002 creates the requisite property interest since it involves the application of statutory penalties for "wreck chasing."

of the Florida Administrative Code does indeed address the "grounds for denial of inclusion on, or removal or suspension from" a rotation list, "[t]hese rules apply only to those wrecker operators who participate in the [Florida Highway Patrol's] call allocation system." Fla. Admin. Code 15B-9.001(1), 9.002(4). Similarly, Fla. Stat. §§ 321.02 and 321.051 expressly address the Florida Highway Patrol wrecker operator system. It is only § 323.002 that is applicable to county and municipal governments, and § 323.002 only provides for penalties for "wreck chasing," as described above.

Furthermore, Blanchard's assertions are in direct conflict with Eleventh Circuit precedent, which makes clear that Blanchard retains no constitutionally protected property interest in remaining on the rotation list. In Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209 (11th Cir. 1995), the Court considered whether two wrecker service companies had a constitutionally protected property interest in remaining on a wrecker rotation call list maintained by the Collier County Sheriff's Office. The Court held that because there was no Florida law to support their claim of entitlement, the plaintiffs failed to establish a property interest protected by the Due Process Clause of the Fourteenth Amendment. Id. at 1211.

15

The Court also noted, as Blanchard points out, that Florida statutory law governs the wrecker rotation system utilized by the Florida Highway Patrol in Chapter 321 and entitles wrecker service operators to a hearing in connection with removal from that particular rotation system.  Id. at 1214 n.4.  However, the Court made clear that these provisions apply only to the Florida Highway Patrol:

> [N]o comparable statutory provision governs wrecker rotation systems established by Florida county sheriffs.  Although the Collier County Wrecker Service Policy requires that all wrecker services on the Collier County rotation list qualify for participation in the Florida Highway Patrol rotation system, the incorporation of Florida Highway Patrol standards into the Collier County policy cannot bootstrap that policy into a regulation with the force of law.  Neither Florida law nor the Florida Highway Patrol standards requires such incorporation or elevates it into the status of an entitlement.

Id.[5]

---

[5] Blanchard asserts that "[a]lthough defendants attempt to show that the statutory scheme for a 'wrecker rotational system' as provided in § 321, Florida Statutes, and § 15B of the Florida Administrative Code are completely inapplicable in this situation, they fail to disclose that the City of Winter Haven Police Department regularly relies on these provisions as a basis for the removal of a tow truck operator from the rotational system."  (Doc. # 23 at 3).  As the Court's holding in Morley's Auto Body makes clear, even the regular reliance on Florida Highway Patrol standards cannot "bootstrap that policy into a regulation with the force of law" such that it creates a property interest for the purposes of § 1983 litigation.  Morley's Auto Body, 70 F.3d at 1214 n.4.

16

Blanchard attempts to distinguish Morley's Auto Body by arguing that it was decided in 1996, prior to the enaction of § 323.002 in 1998.  (Doc. # 24 at 2-3).  Blanchard contends that "[t]here was no such requirement at the time of Morley, and thus the ruling in Morley is clearly not applicable in this case."  Id. at 3.

The Court is not persuaded by this argument.  Section 323.002 does not create any "requirements" or provide for any mechanism to suggest a property interest, as in the case of the Florida Highway Patrol; it merely provides for a statutory scheme to punish "wreck chasing," as described above.

Moreover, the Morley's Auto Body holding was recently reaffirmed in Pete's Towing Co. v. City of Tampa, Fla., 648 F. Supp. 2d 1276 (M.D. Fla. 2009), aff'd, 378 Fed. App'x 917 (11th Cir. 2010), a full decade after the passage of § 323.002.  In Pete's Towing, the Court found that plaintiff's position on the wrecker rotation list was not "property" within the meaning of the Fourteenth Amendment.  Id. at 1288-89.

Blanchard contends that Pete's Towing is distinguishable because it "relied entirely on the rules promulgated by the Tampa Police Department which are not codified in a state statute or regulation, and thus did not have the force of law.

17

No reliance at all was placed by the plaintiffs therein on § 323.002, Florida Statutes." (Doc. # 25 at 3-4).

The Court rejects this argument. The fact that the plaintiffs in Pete's Towing did not rely on § 323.002 hardly distinguishes it from the case at bar; the Pete's Towing plaintiffs presumably did not cite § 323.002 because the statute wholly fails to create a property interest comparable to that created by statutes applicable only to the Florida Highway Patrol, as set forth above.

State law defines the parameters of a plaintiff's property interest for § 1983 purposes, and "[w]hether state law has created a property interest is a legal question for the court to decide." Morley's Auto Body, 70 F.3d at 1212 (internal quotation marks and citations omitted). Additionally, the Court is not required to accept Plaintiff's allegations that amount to legal conclusions as true. Turner v. Neptune Towing & Recovery, Inc., No. 8:09-cv-1071-T-27 AEP, 2010 WL 1462302, at *1 (M.D. Fla. Mar. 16, 2010). Because there exists no statutory basis giving rise to the requisite property interest, the Court determines that Blanchard has no constitutionally protected property interest in remaining on the rotation list. "Absent . . . a deprivation [of a constitutionally protected property interest], there can be no

18

denial of due process." <u>Economic Dev. Corp. v. Stierheim</u>, 782 F.2d 952, 953-54 (11th Cir. 1986). Accordingly, Counts V and VIII are dismissed.

    **B.**   **§ 1983 First Amendment Claims: Counts VI and IX**

        **i.**   **Count VI (as to the City of Winter Haven and Police Chief Mark Levine)**

In Count VI, Blanchard alleges a § 1983 claim against the City of Winter Haven and Mark Levine,[6] alleging a "violation of plaintiff's First Amendment right to Free Speech". (Doc. # 19 at 16).

Blanchard bases his allegations on a complaint he filed with the Internal Affairs Department of the City of Winter Haven Police Department. <u>Id.</u> Blanchard asserts that his complaint, which detailed the conduct of Police Officer Bobby Schumate in improperly referring towing business to Bolton's Towing over the appropriate wrecker operator, was found to be justified, and Officer Schumate was ultimately discharged from his duties as a police officer as a result of the complaint filed by Blanchard. <u>Id.</u> at 17. Blanchard contends that "Employees of the City of Winter Haven Police Department

---

[6] The Court notes that although Blanchard titles Counts VI and IX as "Violation of First Amendment" and "Violation of First Amendment Right to Free Speech," respectively, and makes no reference to § 1983, Counts VI and IX are § 1983 claims.

retaliated against the plaintiff for exercising his right to free speech under the First Amendment by conducting a campaign of disparagement and slander and ultimately removing plaintiff from the rotational allocation service." <u>Id.</u> Blanchard asserts that both Mark Levine and the City of Winter Haven "either knew or should have known of the conduct of the employees of the City of Winter Haven Police Department, but did nothing to prevent such conduct" and that they "either knew or should have known that such conduct violated plaintiff's First Amendment Right to Free Speech." <u>Id.</u>

> The First Amendment protects independent contractors ... from adverse actions taken by the government in retaliation for the exercise of the freedom of speech. <u>Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr</u>, 518 U.S. 668, 673, 116 S.Ct. 2342, 2344, 135 L.Ed. 2d 843 (1996). But, the First Amendment does not guarantee contractors "absolute freedom of speech." <u>Id.</u> 518 U.S. at 675, 116 S.Ct. at 2347. Rather, the balancing test commonly applied in the employment context and first set forth in <u>Pickering v. Board of Education of Township High School District 205, Will County</u>, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), determines the extent of their protection. <u>Umbehr</u>, 518 U.S. at 673, 116 S.Ct. at 2346. The initial inquiry under <u>Pickering</u> is whether the contractor "spoke as a citizen on a matter of public concern." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006)(citing <u>Pickering</u>, 391 U.S. at 568, 88 S.Ct. at 1731). If the answer is no, the contractor has no First Amendment cause of action based on the government's reaction to the speech. <u>Id.</u> If the answer is yes, a First Amendment claim may arise; we then consider whether the government

20

took an adverse action against the contractor because of the protected speech and whether the government "had an adequate justification for treating the [contractor] differently from any other member of the general public." Id.

BMI Salvage Corp. v. Manion, 366 Fed. App'x 140, 143 (11th Cir. 2010).

The Court first addresses the threshold question of whether Blanchard spoke as a citizen on a matter of public concern. If so, any statement regarding a matter of political, social, or other concern to the community is protected. Id. However, if the Court finds that Blanchard did not speak as a citizen, or if his speech touches on matters of private concern, it warrants no First Amendment protection. Id. at 144. The Court notes that even if such speech may be of general interest to the public, that alone does not make it of public concern for First Amendment purposes. Id. The speech must not only be related to matters of public interest, but the purpose of the speech must be to present such issues as matters of public concern. Id.

The purpose of Blanchard's complaint filed with the Internal Affairs Department of the City of Winter Haven Police Department was not an attempt to improve the quality of government. Instead, the purpose was private in nature; i.e., to ensure the profitability of Blanchard's towing company.

21

The complaint was not filed in Blanchard's role as a citizen, but in his role as a wrecker operator on the rotational list. As such, Blanchard's speech is not protected by the First Amendment.  Accordingly, Count VI is dismissed.

### ii.  Count IX (as to Polk County)

In Count IX, Blanchard alleges a § 1983 claim against Polk County, asserting that he suffered "retaliation . . . for exercising his First amendment Right to Freedom of Speech." (Doc. # 19 at 22).

Blanchard bases his allegation on a conversation between Blanchard's attorney and the County Attorney for Polk County, Michael Craig, in which Blanchard's attorney inquired as to the basis for Blanchard's removal from all rotational allocation lists and was advised that the County could remove whomever it wished from any County rotational allocation system for any or no reason and that the County did not have to continue to do business with any business that had sued it. Id. at 23.

Blanchard contends that his removal from the rotation allocation list was in retaliatory response to the complaint filed in the instant litigation by Blanchard on or about October 8, 2009, seeking redress for violations of his constitutional rights by Sheriff Judd and Polk County, which

Blanchard alleges is protected speech under the First Amendment. <u>Id.</u>

As stated above, the Court first addresses the threshold question of whether Blanchard spoke as a citizen on a matter of public concern. The complaint filed in the instant litigation by Blanchard on or about October 8, 2009, seeking redress for alleged violations of his constitutional rights by Sheriff Judd and Polk County was decidedly not filed by a citizen on a matter of public concern; it was filed as a matter of private concern. As such, Blanchard's speech is not protected by the First Amendment. Accordingly, Count IX is dismissed.

### C.   <u>Mandamus: Count I (as to the City of Winter Haven and Police Chief Mark Levine)</u>

Blanchard moves the Court to issue a "Writ of Mandamus requiring the City of Winter Haven and Police Chief Mark Levine to provide an administrative forum to allow defendants to provide the basis for his removal from the rotational allocation system and to allow [Blanchard] to address said allegations," arguing that "[t]here is no other adequate remedy at law or equity to provide [Blanchard] with the due process to which he is entitled." (Doc. # 19 at 10).

The Court's authority to issue a writ of mandamus

pursuant to 28 U.S.C. § 1651 is to be exercised only in exceptional circumstances, "when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." <u>In re Loudermilch</u>, 158 F.3d 1143, 1145 (11th Cir. 1998) (quoting <u>In re Temple</u>, 851 F.2d 1269, 1271 (11th Cir. 1988)).  The issuance of this extraordinary writ is generally a matter of discretion. <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 111 n.8 (1964).

Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) "no other adequate remedy [is] available." <u>Cash v. Barnhart</u>, 327 F.3d 1252, 1258 (11th Cir. 2003).  Indeed, mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." <u>Id.</u>  1258 (citation omitted). As a result, "[t]he petitioner seeking the writ carries the burden of showing that its 'right to the issuance of the writ is clear and indisputable.'" <u>Carpenter v. Mohawk Indus., Inc.</u>, 541 F.3d 1048, 1055 (11th Cir. 2008)(quoting <u>In re Lopez-Lukis</u>, 113 F.3d 1187, 1188 (11th Cir. 1997)).

The Court determines that the exceptional circumstances warranting a writ of mandamus are not present in the case at

bar.  As the Court's analysis in Section III A demonstrates, Blanchard does not have a constitutionally protected property interest in remaining on the rotation list.  As such, neither the City of Winter Haven nor Police Chief Mark Levine are required to provide an administrative forum to notify Blanchard of the basis for his removal from the rotational allocation system and allow him an opportunity to address those allegations.

Because the record before the Court does not permit the conclusion that either the City of Winter Haven or Police Chief Mark Levine failed to perform a nondiscretionary function imposed upon them by law, such that the issuance of a writ of mandamus is justified, the Court denies the request for mandamus, and Count I is dismissed.

### D.   Declaratory Relief: Count II (as to the City of Winter Haven and Police Chief Mark Levine)

Blanchard asks the Court to render a declaratory judgment, arguing that he has a bona fide need for the Court to determine whether he is in good standing pursuant to the Florida Administrative Code.  (Doc. # 19 at 10).

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

25

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In deciding whether to entertain a declaratory judgment action, district courts are provided "ample" discretion. Kerotest Mfg., Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952).

The Eleventh Circuit has held that in actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, "the threshold question is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Cas. & Surety Co., 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted). In declaratory judgment actions, to show a justiciable controversy, the party invoking federal jurisdiction must, at an irreducible minimum, show: (1) that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by favorable court disposition. United States Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991).

No such controversy can be discerned in the instant case. As set forth in Section III A above, Blanchard does not have a constitutionally protected property interest in remaining on

26

the rotation list.  Furthermore, the Florida Administrative Code expressly applies "only to those wrecker operators who participate in the [Florida Highway Patrol's] call allocation system."  Fla. Admin. Code 15B-9.001(1), 9.002(4).  As set forth in the analysis above, the Florida Administrative Code bears no relevance to the instant litigation.

Moreover, the record before the Court does not show that a declaratory judgment would redress the injury for which Blanchard seeks relief.  In denying Blanchard's request to be placed on the Winter Haven Police Department rotation list of Wrecker Operators, Police Chief Levine wrote that he based the decision on "various complaints related to [Blanchard's] operation of a towing service" and took "into account staff input."  No mention is made of the Florida Administrative Code.

For these reasons, the Court declines to entertain a declaratory judgment action.  Accordingly, Count II is dismissed.

### E.   Injunctive Relief: Count III (as to the City of Winter Haven and Police Chief Mark Levine)

Blanchard moves the Court for injunctive relief.  (Doc. # 19 at 11).  Blanchard asserts that he will likely suffer an irreparable harm if Police Chief Levine (or his successor) is

not compelled to provide an administrative forum in which Blanchard can address the basis for his removal from the City of Winter Haven Rotation List.  Id.  Blanchard asserts that he has no other adequate remedy at law and a substantial likelihood of success on the merits.  Id.  Blanchard claims that the issuance of a temporary and permanent injunction would not disserve the public interest and is in the best interest of all similarly placed parties who have been denied due process by the failure of Police Chief Levine and the City of Winter Haven to provide an administrative forum for the review of arbitrary actions.  Id. at 11-12.

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to the four requisites."  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).  The movant must show: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  Id.

As the Court's analysis in Section III A demonstrates,

28

Blanchard does not have a constitutionally protected property interest in remaining on the rotation list. Therefore, Blanchard's allegation of substantial likelihood of success on the merits is unfounded. A party's failure to demonstrate a "substantial likelihood of success on the merits" defeats the party's claim, regardless of the party's ability to establish any of the other elements. <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342 (11th Cir. 1994). Accordingly, Count III is dismissed.

    **F.**   <u>**"Damages": Counts IV and VII (as to the City of Winter Haven and Police Chief Mark Levine and Polk County Sheriff Grady Judd, respectively)**</u>

Counts IV and VII of Blanchard's Amended Complaint are titled "Damages." (Doc. # 19 at 12, 18). Count IV is asserted against the City of Winter Haven and Police Chief Levine. Count VII is asserted against Polk County Sheriff Judd. <u>Id.</u>

Both counts are phrased in a somewhat elusive and incomprehensible fashion and fail to properly identify the legal theory under which Blanchard seeks relief. In Count IV, Blanchard appears to be alleging an intentional tort (<u>See</u> <u>id.</u> at 12; Doc. # 23 at 4), while in Count VII no legal theory is readily discernible. (Doc. # 19 at 18).

Citing Blanchard's vague language, the City of Winter

Haven and Police Chief Levine as well as Sheriff Judd construed Counts IV and VII as sounding in negligence. (Doc. # 20 at 12; Doc. # 21 at 1, 4). The City of Winter Haven and Police Chief Levine also moved the Court for an "[o]rder requiring more definitive statements of the claims against them [if Count IV is a claim other than negligence]". (Doc. # 20 at 12).

The Court notes that Blanchard previously requested an opportunity to file an amended complaint, which the Court granted. (Doc. # 18). In asking the Court for permission to file an amended complaint, Blanchard stated that "[m]any, if not all, of the deficiencies on which these defendants have based their Motion to Dismiss can and will be addressed in an Amended Complaint," (Doc. # 12 at 2), and that "an opportunity to amend the complaint . . . would also allow undersigned counsel to . . . clarify plaintiff's claims of entitlement to relief and what relief is sought as to each defendant." (Doc. # 11 at 5). Despite the Court's granting leave to file an amended complaint, Counts IV and VII still fail to state a claim upon which relief can be granted. Accordingly, Counts IV and VII are dismissed.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants City of Winter Haven and Police Chief Mark Levine's motion to dismiss Plaintiff's amended complaint (Doc. # 20) is **GRANTED.**

(2) Defendants Polk County and Polk County Sheriff Grady Judd's motion to dismiss Plaintiff's amended complaint (Doc. # 21) is **GRANTED.**

(3) The Clerk is directed to enter a judgment of dismissal in favor of the Defendants and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>28th</u> day of March, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record